

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

FILED
JUL 0 2 2015
Phil Lombardi, Clerk
U.S. DISTRICT COURT

(1) TRACY BORROR,

　　　　Plaintiff,

vs.

(1) WORKS & LENTZ OF TULSA, INC.,

　　　　Defendant.

15 CV - 372 JED   TLW

VERIFIED COMPLAINT
(Unlawful Debt Collection Practices)

JURY TRIAL DEMANDED

## PLAINTIFF'S VERIFIED COMPLAINT

NOW COMES Plaintiff, Tracy Borror, and for the Verified Complaint against Defendant, Works & Lentz of Tulsa, Inc., alleges as follows:

### INTRODUCTION

1. Plaintiff states a claim against Works & Lentz of Tulsa, Inc. for violation of the Fair Debt Collection Practices Act, codified 15 U.S.C. § 1692 et seq. (hereinafter "FDCPA"), which was enacted in 1978.

2. Congress stated its findings and purpose of the FDCPA:

**(a) Abusive practices**

> There is *abundant evidence* of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.

**(b) Inadequacy of laws**

> Existing laws and procedures for redressing these injuries are inadequate to protect consumers.

**(c) Available non-abusive collection methods**

VERIFIED COMPLAINT　　　　　　　　　　　　　　1

Means other than misrepresentation or other abusive debt collection practices are available for the effective collection of debts.

(d) **Interstate commerce**

Abusive debt collection practices are carried on to a substantial extent in interstate commerce and through means and instrumentalities of such commerce. Even where abusive debt collection practices are purely intrastate in character, they nevertheless directly affect interstate commerce.

(e) **Purposes**

It is the purpose of this title to *eliminate* abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

## JURISDICTION AND VENUE

3. Jurisdiction of this court arises pursuant to 15 U.S.C. 1692k(d), which states that such actions may be brought and heard before "any appropriate United States district court without regard to the amount in controversy.

4. Defendant conducts business in the state of Oklahoma; therefore, personal jurisdiction is established.

5. Venue is proper pursuant to 28 U.S.C. 1391(b)(2).

## PARTIES

6. Plaintiff is a natural person who resides in Tulsa, County of Tulsa, Oklahoma.

7. Plaintiff is a consumer as that term is defined by 15 U.S.C. 1692a(3), and according to Defendant, Plaintiff allegedly owes a debt as that term is defined by 15 U.S.C. 1692a(5).

8. Defendant is a debt collector as that term is defined by 15 U.S.C. 1692a(6), and sought to collect a consumer debt from Plaintiff.

9. Plaintiff is informed and believes, and thereon alleges, that Defendant is a collections business with an office in Tulsa, Oklahoma.

10. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

11. Beginning in June, 2013, Plaintiff began making monthly payments to Defendant for a medical debt owed to St. Francis Health Systems, Inc.

12. Plaintiff called Defendant's office in response to a letter they had sent threatening to file a lawsuit if she didn't make payments. Defendant took an initial payment during that phone call, then automatically charged her card monthly for $100 thereafter. Nothing was ever sent to Plaintiff confirming this arrangement.

13. Sometime following Plaintiff's April 2014 payment, however, unbeknownst to Plaintiff, her credit card expired, and the automatic payments ceased.

14. Despite having Plaintiff's address, Defendant sent no written correspondence to Plaintiff notifying her that her credit card had expired and that Defendant did not receive payment.

15. Instead, Plaintiff learned that there was a problem with her payment when she was served with notice that she had been sued by Defendant in small claims court, Tulsa County Case Number SC-2014-11950.

16. After being served with the lawsuit, on or about August 26, 2014, Plaintiff called Defendant and spoke with "Bill," who confirmed that Defendant had sent no written correspondence about the payment processing problem.

17. "Bill" told Plaintiff that they Defendant had left Plaintiff twelve (12) voicemail messages after April, 2014. However, these messages left Plaintiff will no information regarding any problem with her payment method, did not state the name of Defendant's company, and did not state the purpose of the call. When Plaintiff told Bill that the voicemail messages they left were not an effective means of communication because they provided Plaintiff with no indication that there was any problem with her payments, "Bill" insulted Plaintiff by telling her stating that it wouldn't have mattered if Defendant had sent any previous letters because Plaintiff wouldn't have responded to the letters, either!

18. Plaintiff later determined that Defendant had repeatedly called her husband at work and on his cell phone from a blocked number, leaving the same vague voice messages. Plaintiff only figured out that it was Defendant afterward, when her husband recognized the caller's name from one of the messages left on their home phone.

19. Plaintiff asked to speak with "Bill's" supervisor and was told that "Shawna" would call her after lunch, but did not receive the call until near close of business despite the urgent nature of the situation. During this conversation, in response to Plaintiff's complaint about the lack of any written communication prior to the lawsuit and also to her complaint about "Bill's" behavior on the phone, "Shawna" told Plaintiff that she apparently misunderstood that Defendant was a "debt collection law firm and not in the business of customer service." This statement was not only condescending but also admission that Works & Lentz, Inc. regularly

does not make effort to work with those from whom they attempt to make collections nor treat them fairly.

20. Also during Plaintiff's phone conversation with "Shawna," Plaintiff offered to pay full remaining original debt amount, excluding court costs and attorney's fees, reserving payment of the additional amounts until after discussing the case with one of the Defendant lawyers as well as Plaintiff's husband. "Shawna" refused to allow Plaintiff opportunity to speak to a Defendant lawyer and demanded full payment. Upon continued pressure from "Shawna" for payment, Plaintiff repeated her previous offer to pay the debt amount immediately by phone and discuss the court costs and attorney's fees the following day, but "Shawna" refused to accept any payment by Plaintiff unless it included the full amount demanded. Plaintiff then asked for the name of "Shawna's" supervisor, which "Shawna" refused to provide. "Shawna" then mentioned the possibility of one of the Defendant lawyers being willing to discuss the case with the Plaintiff, then disconnected the call while Plaintiff was still speaking.

21. After the phone conversation with "Bill's" supervisor, "Shawna," was unhelpful and ended with "Shawna" hanging up on Plaintiff, Plaintiff found it necessary to visit the office of Works & Lentz to plead her case and make payment in person because of the time sensitivity of the court date, the uncooperative telephone conversations and behavior of the Works & Lentz personnel, and her experience with not receiving calls back until almost the close of business in the preceding days. Plaintiff made a visit to Defendant's offices on August 27, 2014.

22. On August 27, 2014, Defendant met with "Carl" at Defendant's offices, told Plaintiff that if she decided to go to court instead of paying the full amount that day, then she would have to pay not only the lawyer's fee that he was agreeing to waive that day only, but also that she could end up having to pay even more to them if the court found additional payment

appropriate and awarded such. During this visit, Plaintiff ended up paying Defendant the full balance on the account, plus the filing fees associated with the small claims action filed by Defendant as demanded by Defendant. Defendant provided Plaintiff with a receipt showing "paid in full" on that case. However, Defendant later dismissed the matter "*without* prejudice" to re-filing, leaving there some question whether Plaintiff would be sued again for the same account despite paying the account balance and filing fees in full.

23. During the August 27, 2014 visit at Defendant's offices, Plaintiff told "Carl" that the phone messages left by Defendant sounded like telemarketer calls, and provided her with no indication that the automatic payments had stopped. "Carl" told Plaintiff that they were not allowed to state the name of Defendant's company in voicemail messages they left for Plaintiff, because "a third-party could put Works and Lentz together because they know what we do."

24. The FDCPA does not prohibit a debt collector from leaving the name of the company in voicemail messages left for consumers.

25. On the contrary, the FDCPA requires meaningful disclosure of the caller's identity in all phone messages left for consumers. 15 U.S.C. §1692d(6). The official staff commentary from the Federal Trade Commission regarding § 1692d(6) states that "[a]n individual debt collector must disclose his employer's identity, when discussing the debt on the telephone with consumers." *See* FTC Staff Commentary to FDCPA, Statements of General Policy or Interpretation, §806(6), ¶2, available at <<http://www.ftc.gov/os/statutes/fdcpa/commentary.htm#806>> and *Torres v. ProCollect, Inc.*, Civil Case No. 11-cv-02989-LTB (D. Colo. June 1, 2012).

26. During the August 27, 2014 visit at Defendant's offices, "Carl" told Plaintiff about another account in Defendant's offices with Warren Clinic. When Plaintiff told "Carl"

that she wanted more detail regarding the claimed charges with Warren Clinic and asked whether she should call Warren Clinic for more information, "Carl" told Plaintiff, "You cannot call my client for something that they have turned in for collection."

27. No law bars consumers from contacting their original creditors to obtain information about alleged debts.

28. On the contrary, the FDCPA encourages consumers to do just this by requiring debt collectors to provide consumers with the name and address of the original creditor of an account upon request of a consumer. *See* 15 U.S.C. §1692g(a)(5).

29. "Carl" next told Plaintiff that because the account he was attempting to collect was for services rendered in 2012, "it's too late to contact your insurance company, because I'm in '14 now," and told Plaintiff that Warren Clinic would provide no further information about the alleged debt other than the date of services, and some procedure codes, which he would not give information how to decipher.

30. Plaintiff has suffered actual damages as a result of these illegal collection communications by the Defendant in the form of anger, anxiety, emotional distress, fear, frustration, upset, humiliation, stress, lack of sleep amongst other negative consequences. Plaintiff's anxiety and stress were exasperated by having to make the visit in person to Defendant's offices, forcing her to find a sitter for her infant, in addition to an alternate driver for picking up her preschooler and her elementary-age child at two separate schools. She was also unable to keep previously scheduled appointments and fulfill her prior obligations for that day.

## COUNT I

## DEFENDANT VIOLATED THE FAIR DEBT COLLECTION PRACTICES ACT, (FDCPA), 15 U.S.C. § 1692 et seq.

31. Defendant violated the FDCPA. Defendant's violations include, but are not

limited to the following:

a) Defendant violated §1692d(6) of the FDCPA by failing to provide meaningful disclosure of Defendant's identity in the voicemail messages left for Plaintiff.

b) Defendant violated §1692e and §1692e(10) of the FDCPA by falsely telling Plaintiff that Defendant was not allowed to leave its name in voicemail messages left for Plaintiff.

c) Defendant violated §1692e and §1692e(10) of the FDCPA by falsely telling Plaintiff that she may not contact Defendant's client, Warren Clinic, after Plaintiff's debt had been placed with Defendant for collection.

d) Defendant violated §1692e and §1692e(10) of the FDCPA by falsely telling Plaintiff that, due to the age of the debt, "it's too late to contact her insurance company" for more information about the alleged debt.

e) Defendant violated §1692f of the FDCPA by unfairly telling Plaintiff that she may not contact Defendant's client, Warren Clinic, for more information about the services allegedly rendered to her.

f) Defendant violated §1692f of the FDCPA by unfairly dismissing the case it filed against Plaintiff "without prejudice," leaving the possibility of re-filing, when Plaintiff had had paid the account in full leaving a $0 balance on the account.

## COUNT II

## DEFENDANT VIOLATED THE ELECTRONIC FUND TRANSFER ACT (EFTA), 15 U.S.C. § 1693 et seq.

32. Defendant violated the EFTA. Defendant's violations include, but are not limited to the following:

a. Defendant violated 15 U.S.C. §1693e(a) of the EFTA by not obtaining

Plaintiff's authorization for periodic recurring transfers in writing. Oral authorizations by the account holder are not acceptable under EFTA. *See* FRB Official Staff Interpretation Regarding Regulation E §205.10(b)-3.

      b.     Defendant violated 15 U.S.C. §1693e of the EFTA by not providing Plaintiff with a copy of Plaintiff's authorization for an electronic fund transfer. 12 C.F.R. § 205.10(b). *See* FRB Official Staff Interpretations Regarding Regulation E §205.10(b)-2 (third-party payee commits violation by failing to obtain authorization for preauthorized transfers in writing or failing to give a copy to the consumer).

      c.     Defendant violated 15 U.S.C. §1693e of the EFTA by not providing Plaintiff with advance notice that funds will be withdrawn. 15 U.S.C. §1693e.

33.     Defendant is therefore liable to Plaintiff under the EFTA for statutory damages of $1,000.00, costs, and Plaintiff's attorney's fees.

**WHEREFORE**, Plaintiff, Tracy Borror, respectfully prays that judgment be entered against Defendant, Works & Lentz of Tulsa, Inc., for the following:

    a)     Statutory damages of $1,000.00, pursuant to the FDCPA, 15 U.S.C. 1692k;

    b)     Actual damages pursuant to the FDCPA, 15 U.S.C. 1692k;

    c)     Statutory damages of $1,000.00, pursuant to the EFTA, 15 U.S.C. 1693m(a);

    d)     Costs and reasonable attorney's fees pursuant to the EFTA, 15 U.S.C. 1693m(a),

    e)     Costs and reasonable attorney's fees pursuant to the FDCPA, 15 U.S.C. 1692k; and

    f)     Any other relief that this court deems to be just and proper.

Respectfully submitted,

/s/ Victor R. Wandres
Victor R. Wandres, OBA #19591

PARAMOUNTLAW
CONSUMER PROTECTION FIRM
4835 S. Peoria Ave., Suite 1
Tulsa, OK 74105
(918) 200-9272 voice
(918) 895-9774 fax
victor@paramount-law.net

## VERIFICATION OF COMPLAINT AND CERTIFICATION

STATE OF OKLAHOMA )
                  ) ss
COUNTY OF TULSA   )

Plaintiff, Tracy Borror, states as follows:

1. I am a Plaintiff in this civil proceeding.

2. I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.

3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification or reversal of existing law.

4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendants, cause unnecessary delay to any Defendants, or create a needless increase in the cost of litigation to any Defendant named in the Complaint.

5. I have filed this Complaint in good faith and solely for the purposes set forth in it.

6. Each and every exhibit I have provided to my attorneys which has been attached to this Complaint is a true and correct copy of the original.

7. Except for clearly indicated redactions made by my attorneys where appropriate, I have not altered, changed, modified or fabricated these exhibits, except that some of the attached exhibits may contain some of my own handwritten notations.

Pursuant to 28 U.S.C. § 1746(2), I, Tracy Borror, hereby declare, certify, verify and state under penalty of perjury that the foregoing is true and correct.

_06-19-15_  
Date

_Tracy A Borror_  
Tracy Borror,  
Plaintiff